IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TODD McCAIN, individually
and on behalf of all other
similarly situated**                                                **PLAINTIFF**

**v.**                                                **CAUSE NO. 1:24CV241-LG-BWR**

**MARY MAHONEY'S, INC.,
d/b/a Mary Mahoney's Old
French House; ANTHONY C.
CVITANOVICH; QUALITY
POULTRY & SEAFOOD,
INC.; JAMES W. GUNKEL;
TODD A. ROSETTI; and DOE
DEFENDANTS 1–10**                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER
CONCERNING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Todd McCain filed this putative class action claiming that Defendants Quality Poultry & Seafood, Inc. ("QPS"), and Mary Mahoney's, Inc. ("Mahoney's") "actively engaged in a criminal scheme . . . to import, mislabel, market, price, and ultimately sell" foreign fish to the customers of Mahoney's restaurant in Biloxi, Mississippi. 1st Am. Compl. [19] at 2. McCain also sued Mahoney's co-owner and manager, Anthony Cvitanovich; QPS's business manager, James W. Gunkel; and QPS's sales manager, Todd A. Rosetti. Defendants have filed [32, 35, 51, 53, 55, 57, 61, 63] Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) that have been fully briefed by the parties. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the facts as alleged in the Amended Complaint are insufficient to

establish a plausible injury-in-fact for purposes of Article III standing to pursue the lawsuit on McCain's own behalf or on behalf of a putative class.

## BACKGROUND

According to the allegation in the Amended Complaint, QPS imported foreign fish, and its business manager, Gunkel, purchased and priced the fish. QPS's sales manager, Rosetti, sold the fish to Mary Mahoney's and its co-owner/manager, Cvitanovich, who mislabeled it for sale at Mahoney's restaurant. McCain claims that he "purchased what Defendants fraudulently marketed and represented as high-priced premium local snapper and red snapper" at Mahoney's restaurant on or about July 29, 2013, December 28, 2016, and August 21, 2018. 1st Am. Compl. [19] at 12. According to McCain, "Had he known that the species of fish were instead inexpensive frozen Foreign Fish, he would not have purchased and ingested them." *Id.* at 4. He further states:

> Defendants' scheme and conspiracy included marketing and advertising high-priced premium fresh fish on Mary Mahoney's menu and through several interstate wire and electronic communications, which were hosted outside of Mississippi, including the publicly accessible website Yelp®, where the menu was posted. There and elsewhere, Mary Mahoney's stated that "all of our seafood is caught in our bountiful gulf waters" to appeal to individuals throughout the United States seeking premium local Gulf Coast seafood.

*Id.* at 8 (footnotes omitted).

McCain claims that he and the putative class "had no means of knowing they were being defrauded" and that they "had no reason to suspect they were being sold inexpensive Foreign Fish instead of high-priced premium fresh fish." *Id.* at 16–17.

He alleges the following injuries and seeks the following damages on behalf of himself and the putative class:

> a. All payments made for the Foreign Fish, as Plaintiff and the Class would not have paid for the Foreign Fish at the time of purchase had Defendants disclosed the true nature of the fish and the criminal scheme. Alternatively, the significant overpayment for the Foreign Fish at the time of purchase.
>
> b. Plaintiff and the Class have been wrongfully deprived of their property in that deliberate misrepresentations, omissions, and concealment caused them to pay for the Foreign Fish, or at a minimum, pay artificially inflated prices for the Foreign Fish.

*Id.* at 27–28.

McCain attempts to assert the following claims on behalf of the putative class: violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), common law fraud, civil conspiracy, and unjust enrichment. He demands actual, statutory, treble, and/or punitive damages, as well as restitution, disgorgement, prejudgment interest, post-judgment interest, attorney's fees, costs, and expert fees.

## DISCUSSION

The Court is required to first consider Defendants' Motions to Dismiss for Lack of Jurisdiction filed pursuant to Fed. R. Civ. P. 12(b)(1). *See Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 481 (5th Cir. 2024). Article III of the Constitution restricts federal courts' jurisdiction to "cases" and "controversies." U.S. CONST. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case — in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). A plaintiff has standing only if he "allege[s] personal injury fairly

traceable to the defendant's allegedly unlawful conduct [that is] likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks omitted).

In a putative class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 924 n.12 (5th Cir. 2023). Furthermore, "standing is not dispensed in gross." *TransUnion LLC*, 594 U.S. at 431 (2021). Therefore, plaintiffs "'must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 61 (2024)).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 446 (5th Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 561 (1992) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–889 (1990)). Thus, the case can be dismissed for lack of standing only if "it appears certain that [the plaintiff] cannot prove a plausible set of facts that establish[es] subject matter jurisdiction." *Umphress v. Hall*, 133 F.4th 455, 462 (5th Cir. 2025).

Defendants argue that McCain has not pled the first requirement of standing—injury in fact. *Defs. of Wildlife*, 504 U.S. at 560. This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection" to a particular action. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024). The term "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* An injury is "particularized" if the injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. Concrete injuries are "real, and not abstract." *TransUnion LLC*, 594 U.S. at 424. It is also significant to note that a defendant's violation of federal law does not necessarily give rise to a concrete injury in fact because,

> under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. . . . Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.

*Id.* at 426–27. Finally, although allegations of monetary injury generally constitute a concrete injury in fact, *TransUnion LLC*, 594 U.S. at 425, the Fifth Circuit has held that "[m]erely asking for money does not establish an injury in fact," *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002).

McCain does not allege that as a result of the fish dinners he ate at Mary Mahoney's restaurant he suffered any health related damages, physical injuries or infirmity. Instead, he alleges economic injury and seeks a full refund based on the assertion that he would not have bought the fish if he had known it was foreign as opposed to local snapper or red snapper.

In *Earl v. Boeing Co.*, the plaintiffs alleged economic injuries that were similar to those alleged by McCain in the present case. *See* 53 F.4th 897, 902 (5th Cir. 2022). They claimed they were harmed "because defendants' fraud induced them to buy [airline] tickets they never would have bought" if they had known the Boeing 737 MAX 8 aircraft had a serious safety defect. *Id.* at 899, 902. In *Earl*, the Fifth Circuit stated that, "Everyone now agrees [this] theory of injury cannot support Article III standing under our decision in *Rivera*." *Id.* (citing *Rivera*, 283 F.3d at 317). In *Rivera*, the Fifth Circuit "held that plaintiffs had 'asserted no concrete injury' because they 'paid for an effective pain killer, and [they] received just that.'" *Id.* (quoting *Rivera*, 283 F.3d at 320–21).[1]

Similarly, the Third Circuit has addressed the question of whether "a plaintiff—who has entirely consumed a product that has functioned for her as expected—suffered an economic injury solely because she now sincerely wishes that

---

[1] The *Rivera* court also held that the plaintiffs had not alleged an injury in fact because, under Texas law, out of pocket damages and benefit-of-the-bargain damages cannot be awarded for a products liability claims. *Rivera*, 283 F.3d at 317. The parties have not briefed whether these types of damages are available under Mississippi law for the types of claims alleged by McCain. Since the Court finds that standing is lacking on other grounds, it is not necessary to address that portion of the *Rivera* decision.

she had not purchased that product." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280 (3d Cir. 2018). The plaintiff claimed that she would not have purchased baby powder if she had known it could lead to an increased risk of developing ovarian cancer. *Id.* at 282. The court held that the plaintiff failed to plead facts sufficient to establish economic harm because she did not allege "that the economic benefit she received . . . was anything less than the price she paid." *Id.* at 281, 290. With regard to the plaintiff's unjust enrichment claim, the court explained that the plaintiff could not "invoke the federal judicial power simply by asserting that Johnson & Johnson ha[d] earned unlawful profits." *Id.* at 291. The court reasoned, "buyer's remorse, without more, is not a cognizable injury under Article III of the United States Constitution." *Id.* at 281.

McCain paid for fish, which he may have sincerely believed to be local snapper or red snapper. However, he consumed the meal without complaint or concern. Apparently satisfied with the fare, he paid the bill, again without question or objection. It was not until some years later that he suspected that he may have been served and eaten something other than local snapper or red snapper.[2] Notably McCain returned on two separate occasions to again eat at Mary Mahoney's restaurant. As before, he consumed and paid for the fish dinner without

---

[2] Specifically, while arguing that the discovery rule should toll the statute of limitations, he alleges that he was unaware he had suffered any injury for a period of approximately five years and ten months. McCain further alleges that he and the putative class "had no means of knowing they were being defrauded." 1st Am. Compl. [19] at 16.

protestation. Thus, on three separate occasions McCain ordered, ate and paid for three, apparently satisfactory, fish dinners. That McCain now alleges that he regrets his purchases and was injured by paying for fish he would not have otherwise purchased does not constitute a concrete injury cognizable injury under Article III of the United States Constitution.

McCain next claims he suffered the economic injury of overpayment. However, he does not allege that QPS and Mahoney's mislabeled all of the fish they sold or that Mahoney's mislabeled all of the snapper it sold on a date that he purchased fish. In fact, McCain concedes there is no way to determine whether he was actually served foreign fish or red snapper. The Fifth Circuit in *Earl* addressed this overpayment theory of damages, which it described as an "overcharge-by-fraud theory." *Earl*, 53 F.4th at 902. The court held that the plaintiffs did not assert a concrete injury in fact because they did not "plausibly allege[ ] that [they were] any worse off financially" due to the defendants' alleged fraud. *Id.* The court reasoned, "At bottom, plaintiffs complain of past risk of physical injury to which they were allegedly exposed because of defendants' fraud" in concealing an airplane's safety defect. *Id.* at 900, 903.

Thus, the pertinent question in the present case is whether the facts pled by McCain would allow the Court to reasonably infer that Mahoney's restaurant served him foreign fish but charged him for local fish. *See id.* at 899 (applying the *Iqbal* standard to determine whether a plaintiff had alleged a plausible injury in fact); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The Defendants cite *Wallace v. ConAgra Foods, Inc.*, a case in which the plaintiffs alleged that some ConAgra Hebrew National beef products were incorrectly labeled "100% kosher." 747 F.3d 1025, 1027 (8th Cir. 2014). The plaintiffs did not allege a physical or religious injury but claimed "ConAgra's representations that kosher is the 'New Organic,' a promise of food purity amid other products full of artificial ingredients, led them to pay an unjustified premium for Hebrew National's ostensibly kosher beef." *Id.* at 1027. However, the plaintiffs admitted that it was "impossible for any reasonable consumer to detect" whether the beef they consumed was kosher. *Id.* at 1030. The Eighth Circuit held that the plaintiffs did not have Article III standing because they had not alleged that they suffered an actual and particularized injury. *Id.* at 1033. The court explained:

> As we cannot discern from the complaint how many packages were tainted with non-kosher beef, it is unclear whether even a bare majority of Hebrew National packages were not kosher. Which means, it is pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef, while it is quite plausible ConAgra sold the consumers exactly what was promised: a higher quality, kosher meat product.

*Id.* at 1030–31.

Other circuits have conducted similar analysis when examining overcharge-by-fraud claims. For example, the Seventh Circuit has held that plaintiffs who purchased infant formula manufactured at an unsanitary facility did not have standing to sue the formula's manufacturer for a potential risk of injury. *In re*

*Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 527 (7th Cir. 2024). The plaintiffs had alleged "because the formula had a risk of contamination, they did not get what they bargained for[—]safe and nutritious infant formula." *Id.* at 528. They sought "economic loss stemming from a premium paid for Abbott's infant formula they would not have otherwise paid if they had known of the risk of contamination." *Id.* The court found that the alleged injury was not particularized because the plaintiffs did not "plead facts suggesting that contamination of Abbott's products was *sufficiently widespread* to plausibly affect any given unit of infant formula, including the ones they purchased." *Id.* at 530 (emphasis added).

Similarly, in *John v. Whole Foods Market Group*, the Second Circuit held that a plaintiff plausibly alleged that Whole Foods overcharged him on at least one occasion for pre-packaged cheese and cupcakes because (1) he alleged that he purchased those items on a monthly basis, and (2) he alleged that eighty-nine percent of food pre-packaged by Whole Foods was mislabeled. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Therefore, he asserted a plausible economic injury in fact "by pleading both the frequency of his purchases and the systematic overcharging of pre-packaged foods at the Whole Foods stores he patronized." *Id.* at 738.

Although similar, this Second Circuit case is distinguishable. In *John* the plaintiff alleged that he routinely purchased the foods at issue over a period of months—between fall 2014 and winter 2015. *See id.* at 736. In contrast, McCain alleges that he ate at Mahoney's restaurant on only three occasions over a five-year

-10-

period.[3]

In addition, the plaintiff in *John* alleged that eighty-nine percent of food pre-packaged by Whole Foods during a brief period of time was mislabeled, *Id.* at 736. Again, by contrast McCain presents contradictory allegations that prevent the Court from determining whether the mislabeling of Mahoney's fish was widespread. For example, in the third paragraph of the Amended Complaint, McCain states that this amount of fish was sold "[s]tarting as early as 2002, but no later than 2012," which is a ten-year period. 1st Am. Compl. [19] at 2. However, in paragraph 23 of the Amended Complaint, he states that Defendants engaged in a "criminal scheme and conspiracy" to mislabel foreign fish "[b]eginning as early as 2002, and no later than 2012, and continuing through November 2019," which is a period of anywhere from seven years to seventeen years. *Id.* at 6. Meanwhile, in paragraph 37 of the Amended Complaint, he alleges that Defendants transferred "at least 58,750 pounds of frozen foreign perch, triggerfish, triple tail, and unicorn filefish" in interstate commerce between December 2013 and November 2019, which equals five years and eleven months. *Id.* at 11. Finally, in paragraph 122, McCain alleges that Defendants imported, mislabeled, and sold at least 58,750 pounds of foreign fish " [b]eginning no later than 2012 and continuing through November 2019,"

---

[3] Although Plaintiff alleges dates on which Defendants allegedly purchased or sold mislabeled fish, those dates—January 26, 2015, July 5, 2017, January 19, 2018, April 16, 2018, September 19, 2018, September 27, 2018, October 18, 2018, February 21, 2019, and May 26, 2019, through August 16, 2019—are not close in time to the three dates on which McCain claims he ate seafood at Mahoney's restaurant—July 29, 2013, December 28, 2016, and August 21, 2018.

which is approximately seven years. *Id.* at 28. These self-contradicting allegations render McCain's claim as to the amount of foreign fish sold by Defendants "implausible on its face." *See Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012). These purchase dates may show when foreign fish was purchased, but not when foreign fish was substituted for red snapper, and not if any was sold to McCain on any occasion, he dined at Mary Mahoney's restaurant.[4]

## CONCLUSION

In the light most favorable to the Plaintiff, McCain has essentially alleged that it is *possible* that on one, or two, or three occasions, within a span of five years, he was unsuspectingly served a mislabeled seafood dinner, which he would not have otherwise purchased, and the consumption of which has heretofore caused him no harm. The claims in the Amended Complaint are based on possibilities, supported by assumptions and suppositions, but do not present facts from which the Court may draw the reasonable inference that the defendants are liable for the misconduct alleged. Defendants' Motions to Dismiss for Lack of Jurisdiction are granted, and their Motions to Dismiss for Failure to State a Claim are moot. To the

---

[4] Even if the Court were to assume that the shortest period of time alleged by McCain—five years and eleven months, or 1,835 days—is correct, and Defendants sold 58,750 pounds of foreign fish over the course of 1,835 days, that would equal approximately thirty-two pounds of fish per day. McCain has not alleged the total amount of fish—local and foreign—that was served, or even purchased, by Mahoney's during that period of time, nor has he alleged the percentage of fish that was foreign. As a result, there would still be insufficient information to enable the Court to plausibly infer that McCain was sold foreign fish at Mahoney's restaurant on any of the three occasions that he ate at the restaurant.

extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [32, 51, 53, 55] Motions to Dismiss for Lack of Jurisdiction filed by Defendants are **GRANTED**. This lawsuit is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Defendants' [35, 57, 61, 63] Motions to Dismiss filed pursuant Fed. R. Civ. P. 12(b)(6) are **MOOT**.

**SO ORDERED AND ADJUDGED** this the 10th day of June, 2025.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE