# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| TODD MCCAIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MARY MAHONEY'S, INC. d/b/a MARY MAHONEY'S OLD FRENCH HOUSE, ANTHONY C. CVITANOVICH, QUALITY POULTRY & SEAFOOD, INC., JAMES W. GUNKEL, TODD A. ROSETTI, and DOE DEFENDANTS 1–10,<br><br>*Defendants.* | Case No.: 1:24-cv-241-LG-BWR<br><br>**[PROPOSED] SECOND AMENDED RICO CASE STATEMENT** |

Pursuant to Local Uniform Civil Rule 83.8, Plaintiff Todd McCain, individually and on behalf of the putative class, submits this statement in support of the RICO claims.

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

   The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

2. **List each Defendant and state the alleged misconduct and basis of liability of each Defendant.**

   a. **Defendants**

   QPS supplied the Foreign Fish to Mary Mahoney's and Cvitanovich which were sold to Plaintiff and the putative at prices customary for authentic snapper. *See* Second Am. Compl. ¶¶ 17, 33–34. QPS imported the Foreign Fish that it held for sale, after shipment in interstate commerce, and facilitated the mislabeling. *Id.* ¶ 39. QPS profited from the scheme by selling the Foreign Fish to Mary Mahoney's. *Id.* ¶ 27.



PLAINTIFF'S EXHIBIT 2

Gunkel was QPS's business manager and oversaw its operations, purchased the Foreign Fish from QPS's suppliers, and determined at what prices the Foreign Fish would be sold to Mary Mahoney's. *Id.* ¶¶ 18, 33–34. Gunkel profited from the scheme because he received bonuses based on QPS's profitability, which was directly tied to the scheme. *Id.* ¶ 27.

Rosetti was QPS's sales manager and oversaw its sales to Mary Mahoney's. *Id.* ¶ 19. Rosetti was the "driving force" behind the scheme to mislabel the Foreign Fish. *See* Rosetti Sentencing Tr. at 12:1, Exhibit E. Further, he suggesting the Foreign Fish as fraudulent substitutes to Cvitanovich. *See* Second Am. Compl. ¶ 19. Rosetti profited from the scheme because he received bonuses based on QPS's profitability, which was directedly tied to the scheme. *Id.* ¶ 27.

Cvitanovich was the co-owner and manager of Mary Mahoney's. *Id.* ¶ 21. He was solely responsible for ordering the Foreign Fish that Mary Mahoney's priced and sold as authentic snapper to Plaintiff and the putative class. *Id.* As the co-owner of Mary Mahoney's, Cvitanovich profited from the sale of the 55,500 fraudulent entrees. *Id.* ¶ 27.

Mary Mahoney's sold the inexpensive Foreign Fish at prices customary for authentic snapper. *Id.* ¶¶ 5–7. Mary Mahoney's generated significant profits from selling the 55,500 entrees at prices customary for authentic snapper to Plaintiff and the putative class. *Id.* ¶ 27.

b.   **The Scheme.**

During the Class Period, Defendants targeted and financially defrauded Plaintiff and the putative class by knowingly importing, mislabeling, and selling 55,550 entrees at prices customary for authentic snapper at Mary Mahoney's. Plaintiff and the putative class accordingly paid higher prices for the inexpensive Foreign Fish they received. *Id.* ¶¶ 1–9, 26–40. Of the 55,500 Snapper Entrees that were ordered and sold during the Class Period, the overwhelming majority—if not all—were substituted with Foreign Fish. *Id.* ¶ 7. The Foreign Fish were not as marketable

pricewise; as they were inferior and accordingly much less expensive in comparison to authentic snapper. Hence, the reason Defendants concealed the scheme. Plaintiff and the putative class suffered financial losses equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the Class Period. *Id.* ¶ 9.

Defendants collectively and consensually entered into a conspiracy and continuous "association-in-fact" enterprise, referred to as the "Foreign Fish Enterprise." *Id.* ¶ 85. Defendants conducted and participated in the affairs of the Foreign Fish Enterprise through a "pattern of racketeering activity," committing numerous predicate acts to facilitate and execute the scheme through the use of, or causing the use of, interstate wire communications and private/commercial interstate carriers, in violation of 18 U.S.C. §§ 1343 and 1341. *Id.* ¶¶ 38–40, 87–90.

Defendants each played a distinct and indispensable role in the Foreign Fish Enterprise and are liable for their own conduct and the Foreign Fish Enterprise's collective conduct. The Foreign Fish were purchased by Gunkel, imported by QPS, mislabeled by Rosetti, and sold by Mary Mahoney's and Cvitanovich to Plaintiff and the putative class at prices customary for authentic snapper. *Id.* ¶ 33. Each Defendant knew full well the fish were neither local nor authentic snapper.

Based on Defendants' continuous activities, relationships, and structure, each directly profited and derived income they would not have otherwise received. *Id.* ¶ 27. The monetary losses to Plaintiff and the putative class were the but-for cause and proximately caused by the scheme. Each Defendants' participation in the scheme is the basis for their liability under RICO, 18 U.S.C. § 1962(c) and (d).

3. **List the alleged wrongdoers, other than the Defendant(s) listed above, and state the alleged misconduct of each wrongdoer.**

Plaintiff has brought suit against all known wrongdoers. Plaintiff reserves the right to seek leave of the Court to amend the Second Amended Complaint and Second Amended RICO Case Statement to include other wrongdoers identified during discovery, pursuant to Fed. R. Civ. P. 15.

4. **List the alleged victims and state how each victim was allegedly injured.**

The victims of the scheme are Plaintiff, Todd McCain, and the putative class members. The class is comprised of tens of thousands of individuals. As a direct and proximate result of the scheme, Plaintiff and the putative class paid an accordingly and customarily higher price for authentic snapper, when they instead received inexpensive and inferior Foreign Fish. Plaintiff and the putative class suffered financial losses equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the Class Period. *Id.* ¶ 9.

5. **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering must include the following information:**

   (A) **List the alleged predicate acts and the specific statutes which were allegedly violated;**

The predicate acts under 18 U.S.C. § 1961(1) are listed in Paragraph 5(B), *infra.*, and are violations of 18 U.S.C. §§ 1343 and 1341.

   (B) **Provide the dates of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act;**

With the intent to defraud, Mary Mahoney's and QPS knowingly made use of numerous interstate wire communications to organize and execute the scheme, in violation of 18 U.S.C. § 1343. Mary Mahoney's and QPS have pleaded guilty to using interstate wire transmissions to

facilitate the fraud in violation of 18 U.S.C. § 1343. *See* Mary Mahoney's and QPS's Plea Agreements ¶ 1, Exhibits G & L.

With the intent to defraud, QPS, Gunkel, Rosetti, Mary Mahoney's, and Cvitanovich caused the Foreign Fish to be deposited, delivered, and/or received—via private and/or commercial interstate carrier—in violation of 18 U.S.C. § 1341. *See* Cvitanovich Plea Tr. at 32:23–25, 33:1–2, Exhibit B.

Defendants wide-ranging scheme or artifice to defraud used interstate wire communications to knowingly and willfully organize, execute, and facilitate the racketeering scheme, in violation of 18 U.S.C. § 1343, including:

 a. In an April 16, 2018 email, Gunkel (QPS's business manager), sent the following instructions to Rosetti (QPS's sales manager), along with other members of QPS's sales staff: "I don't understand why we are giving [African] Perch away. This is a replacement for the triple tail which were selling at $8.99 and $9.99. Now we are selling perch at $5.69 if we can't get at least $6.99 or $7.99 then it's not worth bringing it in here. This is a product that no one else has and it is versatile. Raise the price and make money where we can make money!"

 b. On September 19, 2018, while an authorized federal search of QPS's premises was underway, Cvitanovich (Mary Mahoney's co-owner/manager), sent an electronic text message to Rosetti (QPS's sales manager), ordering imported frozen African perch, which Mary Mahoney's regularly mislabeled and sold to customers as local Mississippi Gulf Coast snapper.

 c. On September 19, 2018, Rosetti (QPS's sales manager) replied to Cvitanovich's text order for African perch, with the following text: "Tomorrow[,] FDA here today." Cvitanovich (Mary Mahoney's co-owner/manager) responded, "Ok."

 d. On September 27, 2018, eight days after the FDA's search of QPS's premises, in a text to Rosetti (QPS's sales manager), Cvitanovich ordered 150 pounds of African perch in order to sell it to customers of Mary Mahoney's as snapper.

 e. On October 18, 2018, about a month after the FDA's search of QPS's premises, in a text to Rosetti (QPS's sales manager), Cvitanovich ordered 60 pounds of African perch to sale as snapper to customers of Mary Mahoney's.

 f. In an October 18, 2018 text, after Rosetti (QPS's sales manager) informed Cvitanovich (Mary Mahoney's co-owner/manager) that QPS was unlikely to obtain

more African perch, by stating that "Perch about to be nonexistent," Cvitanovich instructed him to "Get all they have."

g. In a February 21, 2019 text, Rosetti (QPS's sales manager), told Cvitanovich that "We have 110 cases of perch left when that is gone there is no more. FYI we are looking for alternatives. Unicorn, triple tail and parrot fish are always good alternatives."

h. In a responsive text on February 21, 2019, Cvitanovich (Mary Mahoney's co-owner/manager) told Rosetti (QPS's sales manager) not to sell the remaining cases of African perch to any other customers, stating that "I will buy them." Rosetti responded, "You come bring a check and I will set it aside for you."

i. Throughout the Class Period, Mary Mahoney's directly obtained thousands of payments through interstate wire transmissions generated by credit card sales for the fraudulently mislabeled Foreign Fish.

j. Throughout the Class Period, Mary Mahoney's fraudulently marketed authentic snapper on its menu and through several interstate wire and electronic communications, which were hosted outside of Mississippi, including the website Yelp®.[1]

k. Throughout the Class Period, Mary Mahoney's fraudulently marketed on the websites OpenTable® and Tripadvisor®, which were hosted outside of Mississippi, that it specialized in "locally sourced seafood."[2]

l. Throughout the Class Period, Mary Mahoney's menu was posted on the publicly-accessible website, www.marymahoney.com, which was hosted outside of Mississippi, where Mary Mahoney's marketed authentic snapper, which Mary Mahoney's and Cvitanovich substituted with inexpensive Foreign Fish.

(C) **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Identify the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

The scheme included predicate offenses of wire and mail fraud. *See* 5(B), *supra*.

---

[1] Yelp®, https://www.yelp.com/ (last visited July 5, 2024).
[2] OpenTable®, https://www.opentable.com/r/mary-mahoneys-old-french-house-biloxi ("locally sourced seafood") (last visited July 5, 2024); Tripadvisor®, https://www.tripadvisor.com/Restaurant_Review-g43686-d2023580-Reviews-Mary_Mahoney_s_Old_French_House-Biloxi_Mississippi.html (same) (last visited July 5, 2024).

**(D)    State whether there has been a criminal conviction for violation of the predicate acts;**

There have been criminal convictions for violations of the predicate acts.

### *United States v. Mary Mahoney's* (Case No. 1:24-cr-45-HSO-RPM)

On April 26, 2024, the U.S. Attorney for the Southern District of Mississippi criminally charged Mary Mahoney's for its participation in the scheme. *See* Second Am. Compl., Exhibit F. On May 30, 2024, Mary Mahoney's, through unanimous consent of its board of directors, pleaded guilty to felony charges for participating in the 18 U.S.C. § 371 conspiracy to defraud individuals by marketing mislabeled seafood in violation of 21 U.S.C. §§ 331(k) and 333(a)(2), and in using interstate wire transmissions to facilitate the fraud, in violation of 18 U.S.C. § 1343. *Id.*, Exhibits G & H.

### *United States v. Anthony C. Cvitanovich* (Case No. 1:24-cr-46-HSO-BWR)

On April 26, 2024, the U.S. Attorney for the Southern District of Mississippi criminally charged Cvitanovich for his participation in the scheme. *Id.*, Exhibit I. On May 30, 2024, Cvitanovich pleaded guilty to felony charges related to the conspiracy for mislabeling inexpensive imported seafood as local premium species to profit from its fraudulent sale in violation of 21 U.S.C. §§ 331(k) and 333(a)(2). *Id.*, Exhibit J.

### *United States v. QPS* (Case No. 1:24-cr-89-HSO-RPM)

On July 31, 2024, the U.S. Attorney for the Southern District of Mississippi criminally charged QPS for its participation in the scheme. *Id.*, Exhibit K. On August 27, 2024, QPS pleaded guilty to felony charges for participating in the 18 U.S.C. § 371 conspiracy to defraud individuals by marketing mislabeled seafood in violation of 21 U.S.C. §§ 331(k) and 333(a)(2), and in using interstate wire transmissions to facilitate the fraud, in violation of 18 U.S.C. § 1343. *Id.*, Exhibit L.

*United States v. James W. Gunkel* **(Case No. 1:24-cr-88-HSO-RPM)**

On July 31, 2024, the U.S. Attorney for the Southern District of Mississippi criminally charged Gunkel for his participation in the scheme. *Id.*, Exhibit M. On August 27, 2024, Gunkel pleaded guilty to charges related to the conspiracy for acts resulting in misbranding of inexpensive imported seafood as local premium species in violation of 21 U.S.C. §§ 331(k) and 333(a)(1). *Id.*, Exhibit N.

*United States v. Todd A. Rosetti* **(Case No. 1:24-cr-90-HSO-BWR)**

On July 31, 2024, the U.S. Attorney for the Southern District of Mississippi criminally charged Rosetti for his participation in the scheme. *Id.*, Exhibit O. On August 27, 2024, Rosetti pleaded guilty to charges related to the conspiracy for acts resulting in misbranding of inexpensive imported seafood as local premium species in violation of 21 U.S.C. §§ 331(k) and 333(a)(1). *Id.*, Exhibit P.

**(E)  State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

There has been no civil litigation resulting in a judgment regarding the predicate acts.

**(F)  Describe how the predicate acts form a "pattern of racketeering activity"; and,**

The predicate acts form a "pattern of racketeering activity" in that they are related, continuous, repetitious, and uninterrupted during the Class Period, all in furtherance of the scheme to defraud, as defined by 18 U.S.C. § 1961(5). Plaintiff has identified numerous predicate acts in furtherance of the scheme over a continuous "closed-ended" period of time. *See* ¶ 5(B), *supra*. These predicate acts were used to organize, facilitate, and execute the scheme. The facts, as stated herein and in the Second Amended Complaint, demonstrate that the scheme had a similar purpose, yielded similar results, had similar participants, and caused similar damages. *See* Second Am. Compl. ¶¶ 1–9.

**(G)   State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

The predicate acts relate to each other as part of a common plan, as they all had the same purpose and goal (to import, mislabel, and sell inexpensive Foreign Fish at prices customary for authentic snapper); results (to unlawfully obtain money by means of fraud); participants (QPS, Gunkel, Rosetti, Mary Mahoney's, and Cvitanovich through the Enterprise); victims (Plaintiff and the putative class); and methods of commission (the scheme and predicate acts as set forth in the Second Amended Complaint).

The racketeering acts are also interrelated by their characteristics and are not isolated events, since they were carried out for the same purpose, in a continuous and similar manner, and throughout a substantial period of time. The racketeering activities establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**6.   Describe in detail the alleged enterprise for each RICO claim. A description of each enterprise must include the following information:**

**(A)   State the names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise;**

The following "persons" constitute a union or group of individuals associated-in-fact and referred to in the Second Amended Complaint as the "Foreign Fish Enterprise": (1) QPS, (2) Gunkel, (3) Rosetti, (4) Mary Mahoney's, and (5) Cvitanovich.

**(B)   Describe the structure, purpose, function, and course of conduct of the enterprise;**

The Foreign Fish Enterprise is an association-in-fact enterprise. During the Class Period, the Defendant "persons" were systematically linked with overlapping leadership, structural and financial ties, and continuing coordination with the intended purpose of financially defrauding Plaintiff and the putative class. *See* Second Am. Compl. ¶¶ 1–9, 26–37. The Foreign Fish

Enterprise functioned as a continuing unit, pursued an interrelated course of conduct, and with a common or shared purpose and continuity of structure and personnel to import, mislabel, and sell inexpensive Foreign Fish at prices customary for authentic snapper. *Id.* The Defendants, as members of the Foreign Fish Enterprise, used the association-in-fact Enterprise as an instrument to perpetrate the scheme, through a pattern of racketeering activity, as fully described in the Second Amended Complaint. The purpose of the Foreign Fish Enterprise was to sell inexpensive Foreign Fish at prices customarily charged for authentic snapper to derive racketeering income from Plaintiff and the putative class. *Id.*

**(C)     State whether any Defendants are employees, officers, or directors of the alleged enterprise;**

Defendants are not employees, officers, or directors of the Foreign Fish Enterprise. Cvitanovich is a co-owner and manager of Mary Mahoney's, one of the entities in the Foreign Fish Enterprise. Gunkel and Rosetti are employees of QPS, one of the entities in the Foreign Fish Enterprise.

**(D)     State whether any Defendants are associated with the alleged enterprise;**

Each Defendant was associated with the Foreign Fish Enterprise during the Class Period and for the common purpose of participating and profiting from the scheme and artifices to defraud Plaintiff and the putative class.

**(E)     State whether the Plaintiff is alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or are members of the enterprise;**

Gunkel, Rosetti, and Cvitanovich are individuals, and QPS and Mary Mahoney's are entities, that are separate from the Foreign Fish Enterprise and not the Enterprise itself. QPS, Gunkel, Rosetti, Mary Mahoney's, and Cvitanovich are each members of the Enterprise.

    (F)    **If any Defendants are alleged to be either the enterprise itself or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Defendants are perpetrators of the racketeering scheme. Each Defendant actively participated in the Foreign Fish Enterprise and used it as a means of financially defrauding Plaintiff and the putative class. None of the Defendants were passive instruments of the racketeering scheme. None of the Defendants were victims of the racketeering scheme. Each Defendant knew of the unlawful conduct, participated in the unlawful conduct, and benefited from the unlawful conduct.

7. **State whether the Plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity. In either event, describe in detail.**

The pattern of racketeering activity and the Foreign Fish Enterprise are separate and apart. The racketeering activity was committed in furtherance of the Foreign Fish Enterprise. The parties which made up the Foreign Enterprise maintained distinct purposes, as QPS and Mary Mahoney's conducted business operations outside of importing, mislabeling, and selling the Foreign Fish at prices customary for authentic snapper.

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The usual and daily activities of the Foreign Fish Enterprise consisted of importing, mislabeling, and selling the Foreign Fish to Plaintiff and the putative class at prices customary for authentic snapper. The racketeering activity did not differ from the usual and daily activities of the Enterprise.

9. **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The Foreign Fish Enterprise enjoyed significant financial benefits from the pattern of racketeering activity. The Enterprise benefited by unlawfully receiving millions of dollars from Plaintiff and the putative class that they would not have otherwise received, but for importing, mislabeling, and selling the inexpensive Foreign Fish at prices customary for authentic snapper.

10. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The Foreign Fish Enterprise's activities effected interstate and foreign commerce through the predicate acts as detailed in the Second Amended Complaint. These acts included importing, through interstate and foreign commerce, Foreign Fish from Africa, Suriname, and India. *See* Second Am. Compl. ¶ 39. The Enterprise also affected interstate and foreign commerce through utilization of the mails and wires to facilitate, execute, and coordinate the scheme.

11. **If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

    (A) **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and,**

    The Second Amended Complaint does not allege a violation of 18 U.S.C. § 1962(a).

    (B) **Describe the use, investment, or locus of such income.**

    The Second Amended Complaint does not allege a violation of 18 U.S.C. § 1962(a).

12. **If the Complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

    The Second Amended Complaint does not allege a violation of 18 U.S.C. § 1962(b).

13. **If the Complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

    (A) **State who is employed by or associated with the enterprise; and,**

QPS, Gunkel, Rosetti, Mary Mahoney's, and Cvitanovich are "associated" with the Foreign Fish Enterprise.

### (B) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

The Defendants are not both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c), as stated in Paragraph 6(C), *supra*. The persons are separate and apart from the Enterprise under section 1962(c), which is an association-in-fact comprised of QPS, Gunkel, Rosetti, Mary Mahoney's, and Cvitanovich.

### 14. If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

The Defendants violated Section 1962(d), inasmuch as, in furtherance of their scheme to defraud and in order to execute their objective, they knowingly and intentionally aided and abetted each other, conspired to conduct and participate in, and did conduct and directly participate in the affairs of the Enterprise, through a pattern of racketeering activity, in violation to Section 1962(c). *See* Second Am. Compl. ¶¶ 108–115.

The nature of the above-described acts by Defendants, demonstrate that the members of the Enterprise not only agreed to the objectives of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but that they were aware that their acts were part of an overall pattern of racketeering activity. *Id.*

### 15. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

But for the existence of, and wrongful acts of, the Foreign Fish Enterprise, Plaintiff and the putative would not have overpaid for inexpensive and inferior Foreign Fish. The Defendants' racketeering activities directly, actually, and proximately caused Plaintiff and the putative classes'

damages, as they paid customarily and accordingly higher prices from authentic snapper and were the direct and foreseeable victims of the scheme.

16. **List the actual damages for which Defendant is allegedly liable.**

Plaintiff and the putative class sustained actual financial losses (i.e., money damages), in an amount to be determined at trial, equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the Class Period.

17. **List all other federal causes of action, if any, and provide citations to the relevant statute(s).**

No other federal causes of action are alleged in the Second Amended Complaint.

18. **List all pendent state claims, if any.**

None.

19. **Provide any additional information that you feel would be helpful to the Court in considering your RICO claim.**

Plaintiff is not aware of any additional information which may be helpful to the Court. Plaintiff respectfully requests that the Court grant leave to amend his Second Amended RICO Case Statement should the Court require additional briefing on the facts or application of RICO.

Dated: _____, 2025.                    Respectfully submitted,

/s/ W. Bobby Gill, III
W. Bobby Gill, III, MSB No. 9857
James M. Priest, Jr., MSB No. 99352
**GILL, LADNER & PRIEST, PLLC**
344 Highway 51, Second Floor
Ridgeland, MS 39157
Telephone: (601) 352-5700
bobby@glplawfirm.com
jamie@glplawfirm.com

Gerald M. Abdalla, Jr., MSB No. 101213
**ABDALLA LAW, PLLC**
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone: (601) 278-6055
jerry@abdalla-law.com

Joey D. Dumas, (*pro hac vice*)
**DUMAS LAW FIRM, LLC**
P.O. Box 3046
Mobile, AL 36652
Telephone: (251) 222-6669
joey@joeydumaslaw.com

*Counsel for Plaintiff and the putative class*