IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TODD McCAIN, individually
and on behalf of all other
similarly situated**                                                                        **PLAINTIFF**

v.                                                           CAUSE NO. 1:24CV241-LG-BWR

**MARY MAHONEY'S, INC.,
d/b/a Mary Mahoney's Old
French House; ANTHONY C.
CVITANOVICH; QUALITY
POULTRY & SEAFOOD,
INC.; JAMES W. GUNKEL;
TODD A. ROSETTI; and DOE
DEFENDANTS 1–10**                                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND MOTION FOR LEAVE TO AMEND COMPLAINT AND RICO CASE STATEMENT

Plaintiff Todd McCain asks the Court to reconsider its decision dismissing his First Amended Class Action Complaint for lack of standing. He also seeks permission to file a second amended complaint. McCain's [73] Motions are denied because he still has not established that he suffered a plausible injury in fact when he purchased and consumed fish at Mary Mahoney's restaurant.

### BACKGROUND

According to McCain's [19] First Amended Class Action Complaint, Quality Poultry & Seafood (QPS) imported foreign fish, and its business manager, James W. Gunkel, purchased and priced the fish. QPS's sales manager, Todd A. Rosetti, sold the fish to Mary Mahoney's and its co-owner/manager, Anthony C. Cvitanovich, who mislabeled it for sale at Mahoney's restaurant. McCain alleged that he "purchased

what Defendants fraudulently marketed and represented as high-priced premium local snapper and red snapper" at Mary Mahoney's restaurant on or about July 29, 2013, December 28, 2016, and August 21, 2018.  1st Am. Compl. [19] at 12. According to McCain, "Had he known that the species of fish were instead inexpensive frozen Foreign Fish, he would not have purchased and ingested them." *Id.* at 4.  He attempted to assert the following claims on behalf of himself and the putative class: violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, common law fraud, civil conspiracy, and unjust enrichment.  In a [72] Memorandum Opinion and Order, the Court granted Defendants' Motions to Dismiss for Lack of Jurisdiction because McCain lacked standing, and it dismissed this lawsuit without prejudice.  McCain now asks the Court to overturn the dismissal and grant him permission to file a second amended complaint.

In his proposed amended complaint, McCain provides the following class definition:

> All persons residing in the United States who ordered and paid for a mislabeled Snapper Entree at Mary Mahoney's between January 1, 2016, and November 18, 2019.

Proposed 2d Am. Compl. [73-1] at 15.  He claims that Defendants violated subsections (c) and (d) of the RICO statute by engaging in the racketeering activity of wire fraud and mail fraud.  In the proposed amended complaint, McCain asserts, "During the Class Period, Plaintiff and the putative class ordered and paid for approximately 55,500 Snapper Entrees.  Of those 55,500 entrees, the overwhelming majority—if not all—were substituted with Foreign Fish by Mary Mahoney's and

Cvitanovich." *Id.* at 9. The only facts specific to McCain in the proposed amendment are:

> Within the Class Period, on December 28, 2016, and August 21, 2018, Plaintiff travelled across state lines to Mary Mahoney's where he twice ordered a Snapper Entrée. Based on Defendants' widespread, regular, and repetitious scheme—and like the overwhelming majority, if not all, of the individuals who ordered Snapper Entrees during the Class Period, he too received inexpensive Foreign Fish. Accordingly. Plaintiff paid a price customary for authentic snapper, when in fact, he received inexpensive Foreign Fish.

Proposed 2d Am. Compl. [73-1] at 5. McCain claims that he and the putative class "suffered financial losses equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the Class Period." *Id.* at 14. McCain contends that he and the putative class were unaware that Defendants were mislabeling fish until criminal charges were announced against Mahoney's and Cvitanovich on May 30, 2024.

## DISCUSSION

Generally, a Rule 59(e) motion to reconsider "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citation modified). But when a plaintiff seeks permission to amend his complaint after the court has granted judgment on the pleadings, "the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a)." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citation modified).

Rule 15(a) grants a party permission to amend its complaint "once as a matter of course" twenty-one days after service of a responsive pleading or Rule 12 motion. Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the Rule "evinces a bias in favor of granting leave to amend, unless there is a substantial reason to deny leave to amend." *Doe 1 v. City View Indep. Sch. Dist.*, 150 F.4th 668, 677 (5th Cir. 2025) (citation modified). Reasons for denial include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment." *Rosenzweig*, 332 F.3d at 864.

Defendants argue that McCain should have sought leave to amend when responding to their Motions to Dismiss instead of arguing that his First Amended Complaint was sufficient. The Fifth Circuit has held that

> [a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant.

*Id.* Therefore, "delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).

In his proposed second amended complaint, McCain relies on information obtained from the transcript of a criminal sentencing hearing conducted on November 18, 2024, in *United States v. Cvitanovich*, 1:24cr46-HSO-BWR-1. The hearing transcript was filed on December 3, 2024, and made available to the public on March 3, 2025. McCain filed his [19] First Amended Complaint on September 30, 2024. Defendants filed several Motions to Dismiss between December 2, 2024, and March 13, 2025. McCain's responses to the Motions were filed between January 31, 2025, and April 3, 2025. The Court entered a [72] Memorandum Opinion and Order dismissing this lawsuit for lack of standing on June 10, 2025. As a result, McCain had access to the information he used to prepare his proposed amendment before the parties finished briefing Defendants' Motions to Dismiss. Although McCain's delay has caused Defendants and the Court to expend additional resources, the delay has not caused a sufficient burden on Defendants and the Court to warrant denying McCain's Motion to Amend on that basis.

Defendants next argue that McCain's proposed amendment would be futile because his allegations remain insufficient to establish Article III standing. "In the class-action context, the class representative must have standing to represent a class of other allegedly injured persons." *Wilson v. Centene Mgmt. Co.*, 144 F.4th 780, 787 (5th Cir. 2025). Thus, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016), *as revised* (May 24, 2016) (citation modified).

To establish standing, the plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the Defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423 (2021). These elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 446 (5th Cir. 2025). Thus, the facts alleged must "give rise to a plausible claim of his standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021). In other words, "the plaintiff must meet a pleading burden paralleling the *Twombly-Iqbal* facial plausibility requirement, and allege sufficient factual matter to support the inference that standing exists." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While considering whether the plaintiff has met this standard, the court must take the plaintiff's well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Barilla*, 13 F.4th at 431.

In his proposed amendment, McCain alleges that Defendants fraudulently

sold approximately 55,500 pounds of foreign fish "at higher prices [than] customary for authentic snapper" between January 1, 2026, and November 18, 2019. Proposed 2d Am. Compl. [73-1] at 2, 7. Also, he now claims he consumed and overpaid for foreign fish on two occasions—December 28, 2016, and August 21, 2018—instead of three occasions. He claims that Mahoney's and Cvitanovich "focused on fraudulently substituting Foreign Fish in two specific entrees that were priced accordingly as authentic local snapper." *Id.* at 2. In a footnote, he lists numerous entrées served by Mahoney's during the class period, and he states:

> Taking into consideration the numerous other entree options that customers purchased during the Class Period, it is plausible to infer that the 55,000 Snapper Entrees sold by Mary Mahoney's were the overall total number of Snapper Entrees ordered between January 1, 2016, and November 18, 2019.

*Id.* at 2–3 n.2. He further claims, "During the Class Period, Mary Mahoney's and Cvitanovich received approximately 55,500 total orders for the Snapper Entrees from Plaintiff and the putative class." *Id.* at 3. He provides the following basis for this allegation in a footnote:

> [On pages 10–15 of the Cvitanovich sentencing transcript,] the Court states that 'during that period from 2016 to 2019, roughly 55,500 lunch or dinner entrees were sold that were misbranded at a time when Mr. Cvitanovich was solely responsible for purchasing the fish. And I think the argument in the objection is, well, **in the corresponding time after the menu changed, another 50,000 people bought the same dishes**.' *Id.* at 14:21–25, 15:1 (emphasis added). If for example 65,000 Snapper Entrees had been sold between 2016 and 2019, this objection could not have been made by Cvitanovich's attorney. Thus, it is plausible to infer that during the Class Period a total of 55,500 Snapper Entrees were ordered and sold by Mary Mahoney's.

*Id.* at 3 n.3.[1] The Court finds that Cvitanovich's objection does not lead to a plausible inference that Mahoney's always or almost always substituted frozen, foreign fish for its snapper entrées. In fact, the sentencing transcript contains no reference to snapper.

Furthermore, exhibits that McCain attaches to his proposed amended complaint indicate that snapper may not have been the only local fish substituted with foreign fish. For example, the Mahoney's Criminal Information alleges that it mislabeled red snapper, snapper, and redfish entrées. Proposed 2d Am. Compl., Ex. 1F at 4. McCain also relies on a news article reporting that Mahoney's mislabeled both grouper and snapper. Proposed 2d Am. Compl., Ex. 1C at 1. McCain also attaches the QPS Indictment, which lists numerous dates on which Mahoney's allegedly purchased foreign fish from QPS. None of those dates are close in time to the dates on which McCain alleges he purchased snapper from Mahoney's.

The facts in McCain's proposed amended complaint do not lead to a plausible inference that McCain purchased and consumed mislabeled fish. He was apparently satisfied with the fish because he consumed it and paid the price set by Mahoney's on at least two occasions. And he concedes that he had no idea that he may have been served something other than snapper until criminal arrests were

---

[1] Cvitanovich's attorney objected to a sentencing enhancement related to the number of victims harmed by the fish mislabeling scheme. He pointed out that "the sales of those dishes involved continued to be just at the same rate or even higher, at higher prices than occurred before, so the question became whether or not there were victims that relied upon the alleged misbranding." Proposed 2d Am. Compl. [73-1], Ex. 1A, at 10.

announced.  McCain has not provided the name of the snapper entrée(s) he ate,[2] and there are no facts from which the Court could infer the number of times Mahoney's sold the entrée(s) McCain purchased during the class period or the number of times that entrée that may have been mislabeled.  McCain does not have Article III standing because he has not alleged that he suffered an actual and particularized injury. He has merely alleged a possibility that he may have been overcharged for the entrées he consumed.  McCain's [73] Motion to Alter or Amend the Memorandum Opinion and Order dismissing this case and his [73] Motion to file a Second Amended Complaint are denied because his proposed amendment would be futile.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Todd McCain's [73] Rule 59(e) Motion to Alter or Amend Judgment and [73] Rule 15(a) Motion to Amend are **DENIED**.  Since the Court did not enter a final judgment along with its previous [72] Memorandum Opinion and Order, the Court will now enter one as required by Fed. R. Civ. P. 58(a).

**SO ORDERED AND ADJUDGED** this the 15th day of November, 2025.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

[2] In his First Amended Complaint, he alleged that he purchased "snapper and red snapper" at Mahoney's on three occasions.  1st Am. Compl. [19] at 12.  This statement indicated that he may have purchased one snapper entrée and one red snapper entrée on each visit.  He now claims he "twice ordered a Snapper Entree." Proposed 2d Am. Compl. [73-1] at 5.